

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br>vs.<br>FRANCISCO JAVIER ARELLANO-FELIX,<br><br>　　　　　　　　　　Defendant. | CASE NO. 97CR2520-LAB<br><br>**ORDER DENYING MOTION TO RECUSE** |

　　I have been presented with a motion to recuse in this case, filed on behalf of defendant Francisco Javier Arellano-Felix by his appointed counsel, David Bartick. The United States of America, the plaintiff in this case, has filed an opposition. The basis for the motion, as respectfully explained by Mr. Bartick, is that I was previously employed as an Assistant United States Attorney and, as such, I may have some historical connection to the investigation of this case or to aspects of it. He also suggests, more generally, my former affiliation with the U.S. Attorney's office raises the specter of partiality since this case is being prosecuted by the same office. My recusal is required if at any time in the past I participated as counsel or advisor in the matter, or even if I previously expressed an opinion concerning the merits of the case. 28 U.S.C. §455(b)(3). Alternatively, I am bound to disqualify myself from presiding in this case if I determine my "impartiality might reasonably be questioned" by others

1 | who are aware of all the facts and circumstances giving rise to the motion. 28 U.S.C.
2 | §455(a).
3 |     The facts here are as follows:
4 |     For at least the past 15 years, the United States Attorney's office in San Diego
5 | has been investigating the suspected criminal narcotics smuggling activities of a group
6 | known as the Arellano-Felix Organization ("AFO"). The government believes the AFO
7 | has been the dominant cocaine and marijuana drug smuggling cartel along the
8 | California/Mexico border since the mid-1980s. In addition to drug trafficking, the
9 | government alleges cartel members have engaged in money laundering, racketeering,
10 | and arms trafficking, and have committed kidnapings, torture and murder.
11 |     In 1997, the government's continuing investigation of the AFO resulted in a
12 | criminal indictment being returned against one of the cartel's reputed leaders and
13 | organizers, Ramon Arellano-Felix. Ramon Arellano-Felix, who died in 2002, was the
14 | brother of defendant Francisco Javier Arellano-Felix. The original indictment against
15 | Ramon Arellano-Felix was returned on September 11, 1997. Since then, the
16 | government has continued its investigation of the AFO and has sought and obtained
17 | numerous superseding or follow-on indictments charging other suspected members
18 | of the organization. The defendant before me, Francisco Javier Arellano-Felix, was
19 | first charged in a superseding indictment returned on ~~July 1, 2003~~ Nov. 24, 2002 [LAB]. The indictment that
20 | is presently before me, the seventh superseding indictment, names Francisco Javier
21 | Arellano-Felix and ten other defendants and was returned by a grand jury on
22 | December 4, 2003.
23 |     I was first appointed as a Magistrate Judge to this Court in June 1997. In
24 | September 2003, I was elevated to my current position as a United States District
25 | Judge.
26 |     Before being appointed to the court, I served as a federal prosecutor in the
27 | United States Attorney's office in San Diego for 12 years. I had a variety of
28 | assignments within the U.S. Attorney's office, including serving as a supervisor for

approximately three years. However, I never served in the Narcotics Section, nor was I assigned to the related Organized Crime Drug Enforcement Task Force. Nor did I ever supervise or have reporting to me any prosecutor who worked in those sections. To the best of my knowledge, I have never had any personal involvement in the investigation of the AFO, nor have I ever supervised other prosecutors who were so assigned. More specifically, I never supervised any of the three prosecutors who are assigned to prosecute this case, Laura Duffy, Peter Ko, or Timothy Coughlin.[1] In addition, I have no recollection of ever being briefed on the subject matter of the AFO, its activities, the identities of suspected AFO members or affiliates, or any aspect of ongoing investigations of the organization. I do not believe I ever was. Nor did I ever review a proposed indictment, or participate in an indictment review meeting (a meeting of senior lawyers to review and discuss a proposed criminal indictment), or express an opinion pertaining to the AFO or anyone suspected to be affiliated with the organization.[2] In sum, to the best of my knowledge and recollection, I have had no historical connection to the investigation of the case before me, nor to the investigation or prosecution of any of the defendants named in the seven AFO indictments.

Because I have never participated in any aspect of the investigation of the AFO, nor ever supervised any participant in the investigation, nor expressed any opinion on the matter, I can perceive no reason why my recusal is required under §455(b)(3). Standing alone, my status as a former Assistant United States Attorney does not suffice, even though I served in the U.S. Attorney's office during the time the AFO investigation was apparently underway. *See United States v. DiPasquale,* 846 F.2d 271, 278 (3rd Cir. 1988) (absent a specific showing that judge who previously worked

---

[1] To the best of my knowledge and recollection, neither Ms. Duffy nor Mr. Ko was employed by the U.S. Attorney's office during the time I was there, although Mr. Coughlin was.

[2] The government's submission corroborates my memory on these points. According to their records, the first prosecution memorandum discussing the proposed case against the AFO was not circulated until July 1997, after I had left the U.S. Attorney's office. Furthermore, the government represents my name appears nowhere in any of the memoranda concerning the AFO investigation.

in U.S. Attorney's office participated in the investigation or prosecution of the case, §455(b)(3) does not mandate recusal). Rather, before I am obligated to recuse, §455(b)(3) requires me to have said or done or heard something pertaining to the AFO investigation – in other words, to have actually participated in the investigation or prosecution of the case.

No case or other authority has been cited to me, and I am aware of none, supporting the proposition that a *per se* rule of recusal applies when a judge has previously worked for a law firm or represented a government agency involved in litigation that later comes before the judge. To be sure, the issue of timing is important. A federal judge's recusal from cases in which lawyers from his former firm appear is addressed by Canon 3 of the Code of Judicial Conduct and by Advisory Opinion No. 24 (Sept. 1, 1972; revised July 10, 1998; last modified December 9, 2002) issued by the Judicial Conference Committee on Codes of Conduct. Both of these authorities suggest that for at least **two years** after taking the bench, a judge should recuse himself from cases in which his former firm appears. My departure from employment with the U.S. Attorney's Office more than **nine years** ago easily meets this standard.[3]

The alternative basis cited for my recusal is §455(a), which requires recusal if there is an appearance of partiality. The standard for judging the appearance of partiality under §455(a) is an objective one, and involves ascertaining "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Nelson,* 718 F.2d 315, 321 (9th Cir. 1983). No specifics are offered by the defendant to support his argument that I should recuse under this standard and, looking at the question independently, I cannot conceive of any reason. In the more than nine years I have served as a judge on this court, I have presided in thousands of federal criminal cases in which the

---

[3] It is also significant on the issue of timing that the first indictment naming Francisco Javier Arellano-Felix was not returned until July 1, 2003 – more than **six years** after I had left the U.S. Attorney's office.

1  charges were being prosecuted by lawyers in the San Diego U.S. Attorney's office. No
2  one involved in any of those cases ever suggested – at least, not publicly or on the
3  record – that my status as a former federal prosecutor was likely to undermine public
4  confidence in my ability to be fair.[4]

5  What this means, of course, is that there simply is no widespread, justified or
6  reasonable perception that a judge's impartiality is suspect in criminal cases because
7  the judge formerly served as a prosecutor. Here again, timing is important. Since
8  1997, I have routinely judged criminal cases without, so far as I am aware, generating
9  complaints or engendering public opinion that I am unfair or partisan. That is
10 expected and as it should be. Thus, I do not believe, and I do not find, that a well-
11 informed person would reasonably conclude that an appearance of impropriety
12 prevents me from presiding in this case merely because I once worked in the same
13 office now prosecuting the case. *See Microsoft Corp. v. United States,* 530 U.S. 1301,
14 1302 (2000) (decision whether a judge's impartiality can "reasonably be questioned"
15 is to be evaluated from the perspective of well-informed individual with knowledge of
16 the pertinent facts).

17 Federal judges have an obligation to recuse themselves whenever
18 circumstances require it, or when their impartiality can reasonably be questioned. That
19 is the course I will certainly take when required. But judges also have an obligation not
20 to recuse themselves when circumstances do not require it. *See In re Drexel Burham*
21 *Lambert, Inc.,* 861 F.2d 1307, 1312 (2nd Cir. 1988) ("A judge is as much obliged not
22 to recuse himself when it is not called for as he is obliged when it is."). I am required
23 ////

---

[4] Because many ex-prosecutors go on to be judges, a claim that a judge cannot fairly decide criminal cases because he or she formerly served as a prosecutor does not survive scrutiny. Looking at the backgrounds of the judges on our court as an example proves the point. Of the seventeen district judges on our court (twelve active and five senior), eleven formerly served as prosecutors, including myself, Chief Judge Gonzalez, Judges Moskowitz, Miller, Whelan, Lorenz, Hayes, Houston, and Senior Judges Thompson, Enright and Rhoades. In addition, five of our seventeen judges formerly worked in the San Diego U.S. Attorney's office: myself, Judges Moskowitz, Lorenz, Hayes and Houston.

to follow the latter course when recusal is neither indicated nor justified. Considering all of the circumstances, I believe I remain obligated to hear this case.

Accordingly, defendant Francisco Javier Arellano-Felix's motion that I recuse is **DENIED**.

**IT IS SO ORDERED**.

DATED: 9-5-06

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

cc:  All Counsel of Record